The BOARD OF TRUSTEES OF the POLICE PENSION AND RETIREMENT SYSTEM OF OKLAHOMA CITY, Plaintiff in Error,

v.

William P. FARIS, Defendant in Error.

No. 42985.

Supreme Court of Oklahoma.

May 12, 1970.

Roy H. Semtner, Municipal Counselor, Robert H. Anderson, Asst. Municipal Counselor, Oklahoma City, for plaintiff in error.

Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the eligibility of the defendant in error, William P. Faris, for policemen retirement benefits under Sections 18 and 19 of an Oklahoma City Ordinance (Tit. 12, Ch. 2, Rev. Ordinances of The City of Oklahoma City, Oklahoma, 1961) enacted under the specific authority of the Police Pensions and Retirement Act (11 O.S.1961, Sections 541 and 541a to 541w), and hereinafter referred to as Sections "2.18" and "2.19".

Faris was employed by the Oklahoma City Police Department continuously for a period of approximately sixteen and one-half years beginning in 1949. In July of that first year, while on duty in downtown Oklahoma City, he arrested a man in a drunken condition. When Faris took him to the police station for booking, the man passed out on the floor, and, when Faris attempted to pick him up, he wrenched his back and was taken to the hospital, where he was treated for lumbar strain. After a week's treatment, Faris returned to active duty.

Almost ten years later, in March, 1959, Officer Faris used force in making another arrest and his back became painful again. The next day he was taken to a hospital, where, a few days later, a Dr. M operated on him for a herniated disk in his back. After a period of hospitalization and convalescence, Faris again returned to active duty. After several more years of employment by the Oklahoma City Police Department, Faris was discharged for cause in October, 1965.

Thereafter, on December 17, 1965, he filed a pleading entitled "APPLICATION FOR PENSION" with plaintiff in error, The Board of Trustees of the Police Pension and Retirement System of The City of Oklahoma City, hereinafter referred to merely as the "Board". In said application, Faris, hereinafter referred to by name, or as "Applicant", set forth the date his service as an Oklahoma City Police Department member began and ended, and, alleged, among other things, that his average final compensation for his services, as such, was $421.17 (per month), and that he had become permanently disabled in line of duty from causes he briefly referred to therein. In said application, Faris prayed that he be granted a "monthly disability pension" equal to one-half of his average final compensation.

After two hearings on said application, at the last of which, evidence was introduced as to the injuries Applicant had suffered, at various times from the latter part

of July, 1949, until May, 1964, while he was employed by the Police Department, the Board rendered a decision on January 21, 1966, denying his application.

Thereafter, when Applicant appealed to the above described District Court, said court, upon consideration of a transcript of the proceedings before the Board, and of the parties' briefs, entered an order in February, 1967, in which, after finding, among other things, that the Appl'cant had sustained "personal injury resulting in permanent disability while in service as an officer with the Oklahoma City Police Department", and that it was unable to determine the percentage of such disability, it reversed the Board's decision and remanded the case to said Board to determine such percentage "and thereafter award Applicant disability pension in an amount to which Applicant may show himself entitled."

After the case's remand to it, the Board, at a meeting in June, 1967, considered additional medical evidence concerning the Applicant's condition, and, though it found he had "some permanent partial disability as regards unlimited physical activity", it also found that his impairment for performing his assigned normal police duties, at the time he was discharged for cause, was "zero per cent", and again denied his application.

When, after Applicant, in July, 1967, filed in the hereinbefore described District Court action an application to said court to schedule a hearing on the matter, and to order the Board to award Applicant a pension in compliance with its hereinbefore described February order and the applicable ordinances and statutes, the case, by agreement, was submitted to the court on briefs. Thereafter, in January, 1968, the court rendered judgment (again) finding that the Applicant sustained personal injuries resulting on personal disability "while in service as an officer with the Oklahoma City Police Department", and that, under the applicable State Statutes and City Ordinances, he is entitled to a "disability pen-

sion for injury incurred in line of duty from the 12th day of October, 1965 * * *". The benefits awarded Applicant were described in the court's judgment as follows:

"4. That the said Board of Trustees is hereby ordered and directed to pay to Petitioner the pension due to him and the arrearages due to him under the provision of Title 12, Section 2.18 of the Revised Ordinances, 1960, of the City of Oklahoma City, Oklahoma, as follows:

"a) Three (3) months at regular pay for the period of October 12, 1965, through and including January 12, 1966, at $468.75, for a total of $1,406.25; and

"b) Twelve (12) months at his calculated pension rate of $179.00 per month for the period January 12, 1966, through and including January 12, 1967, for a total of $2,148.00; and

"c) Ten (10) months at his calculated pension rate of $179.00 per month for the period January 12, 1967, through and including November 12, 1967, for a total of $1,790.00; and

"d) $179.00 per month commencing November 12, 1967, and a like amount each and every month thereafter; and

"e) Petitioner is herewith given judgment against said Board of Trustees in the total amount of $5,344.25 for arrearages due and payable aforesaid as of November 12, 1967, for which let judgment issue."

██ The Board thereafter lodged the present appeal asserting various errors in the court's judgment. In one part of its briefs, the Board takes the position that, even if Applicant might have been entitled to a retirement allowance of $179.00 per month, he was not entitled to the "regular pay" for the three months beginning October 12, 1965, which the court, in its above

described judgment, allowed him. We think there is merit in this position. Section 541m, supra, authorizes cities or towns, that have Pension and Retirement Systems under the Act, to pay policemen, who are temporarily disabled, temporary disability allowances where their Systems' Boards of Trustees find they are confined to bed or to a hospital and require professional attention on account of temporary disability incurred on duty and as a consequence of the performance of their duties. The only provision of the Oklahoma City Ordinances (to which our attention has been directed) providing for payment of a policeman's full regular pay (in the nature of temporary disability allowances) when he is disabled from such a cause, is found in Section 2.18, supra. But said section specifically provides such an allowance "for the *first* three (3) months of such disability *immediately following* such injury, * * *". There was no evidence in the present case that the Applicant received any injury on duty *only* three months before the date of October 12, 1965, which was the beginning of the three-months' period for which the trial court's judgment awarded him disability benefits at the rate of his regular pay. That part of said judgment therefore cannot stand.

The rest of the award contained in that part of the judgment referring to the Applicant's "calculated pension rate" appears to be computed at the rate prescribed in Section 541L, supra, which reads in pertinent part:

"The amount of a disability allowance or pension paid a police officer * * *, after the policeman completes fifteen (15) years of service under this Act and *who becomes disabled* or dies *from any cause,* shall be an amount equal to one-twentieth (1/20) of the amount of the pension the policeman would have received upon regular retirement for each year or fraction thereof for twenty (20) years, which the policeman had served under the provisions of this act prior to his disability or death,

plus two percent (2%) of the average annual compensation for each additional year's service in excess of twenty (20) years, not to exceed in any event three-fourths (3/4) of the annual average compensation of such policeman during the last five (5) years.

"Before making a finding as to the disability of a policeman, the Board of Trustees shall require that if the policeman is able to make a certificate as to his disability which shall be subscribed and sworn to by such policeman. It shall also require a certificate as to such disability to be made by the city or town physician. If there is one, or if not, by some physician licensed to practice in the State of Oklahoma. And such Board shall require other evidence of disability before making such disability allowance. The Board of Trustees, in making disability allowances, shall act upon the written request of the policemen or without such request, if it deem it for the good of the Police Department. Any disability allowance shall cease when any policeman receiving same shall be restored to active service at a salary not less than three-fourths (3/4) of his average annual compensation.

* * * * * * "

(Emphasis added)

Section 2.18 of the Oklahoma City Ordinances, supra, contains essentially the same provisions as the above quoted statute, but it refers to the retirement that a "policeman who has served fifteen (15) years or more" and has become disabled for any cause shall be eligible, as "disability retirement".

The Board's position, as it may be briefly described, seems to be that the evidence introduced before it, and reviewed by the District Court, does not show the Applicant to be disabled to perform his duties. This argument contains the suggestion that the Board "had first hand knowledge of the physical requirements of Faris' occupation", and includes the inference that, at the time of said Applicant's discharge, his

duties were less strenuous than those of policemen assigned to a "beat" or patrol, and that therefore the medical evidence did not establish the total disability required of an applicant to be eligible for a disability retirement allowance. The Board calls attention to the physicians' reports included in the medical evidence and to the fact that none of these reports stated "that Faris was unable to continue his duties." The Board says that, of these reports, those of Drs. M and B may constitute "possible exceptions" to this unequivocal representation, but that the heart trouble that these two doctors found in the Applicant was expressly refuted in the report of Dr. L, the "City Physician-designate."

We have carefully examined all of these reports and have concluded that whether or not they show that the Applicant had become physically disabled to perform his duties for the purpose of eligibility for a disability retirement allowance depends upon what duties are referred to. All of the reports, the majority of which were made after the date of the Applicant's discharge by the Police Department, indicated that he had become unfit for stooping, heavy lifting, or strenuous physical activity. It is plain to see that inability to engage in that type of activity renders a man physically disabled to perform duties of a policeman, such as the Applicant was performing in connection with the two above mentioned arrests he made in 1949 and 1959, respectively; and the above mentioned medical expert, Dr. B, must have been thinking of such duties when, in his report, dated January 20, 1966, he stated: "This man is totally disabled *for regular work* due to infirmities of age, pathology of lower spine, and arthritis." (Emphasis added.) As such duties—sometimes calling for heavy lifting and strenuous physical activity—cannot be divorced, or excluded, from the regular duties, or work, of a policeman, we are not impressed by the inference in the Board's argument that, at the time of the Applicant's discharge, he may have been on jail duty assignment, or have had a less strenuous assignment than that

of a regular policeman whose daily routine may require strenuous physical exertion in making arrests, or quelling different kinds of disturbances or breaches of the peace. Thus, though the evidence does not unequivocally show just what kind of police duties Applicant was performing on the date of his discharge, the question is: When does a policeman become physically disabled to perform the regular duties of a policeman, within the contemplation of the provisions for policemen's disability retirement allowance, in the Police Pensions and Retirement Act and the Oklahoma City Ordinances cited supra? We think this question can only be answered by saying that a policeman becomes disabled within the meaning of those provisions when he can no longer perform the regular duties of a policeman. We also think that when the Board found (after the court had remanded the case to it for a finding as to the Applicant's percentage of disability) that "the impairment of said Applicant's ability to perform the normal police duties to which he was assigned, at the time of his discharge for cause, is * * * zero per cent * * *", it was begging the question, so to speak. We notice that by a 1969 Amendment of Sec. 541(b) of the Act (11 O.S.1969 Supp., § 541(b)) the definition of "Policeman" is not now as broad, as before, but that Amendment is not involved in this case; and we express no opinion thereon.

As in our opinion the weight of the evidence in this case supports the conclusion that, when the Applicant was discharged, he *had become* physically disabled to perform the regular duties of a policeman, we think his said application should have been approved, instead of denied. We therefore hold that the District Court did not err, or abuse its discretion, in reversing the Board's decision. However, as hereinbefore indicated, it is our opinion that said court's judgment was in error in its allowance to Applicant of the temporary disability benefits equivalent to three months of his regular pay. Accordingly, said judgment is hereby modified by awarding the

Applicant a retirement disability allowance of $179.00 per month beginning on the 12th day of October, 1965, and, as thus modified, with an adjustment of its total amount to that rate and starting date, said judgment is hereby affirmed.

BERRY, V. C. J., and DAVISON, WILLIAMS, HODGES, LAVENDER and McINERNEY, JJ., concur.

IRWIN, C. J., and JACKSON, J., concur in result.